IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHN DAVID KENNEMER, | § | |
| (TDCJ No. 02197180), | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 4:20-cv-056-P |
| | § | |
| PARKER COUNTY, TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

OPINION AND ORDER OF PARTIAL
DISMISSAL UNDER 28 U.S.C. §§ 1915A(b)(1)

This case is before the Court for review of *pro-se* inmate/plaintiff John David Kennemer's ("Kennemer") claims to determine if they are frivolous, malicious, or fail to state a claim upon which relief may be granted under the screening provisions of 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B). Having reviewed and screened the claims in the complaint, the Court concludes that some of Kennemer's claims and some defendants in this case must be dismissed under authority of these provisions.

BACKGROUND/COMPLAINT

Kennemer filed this lawsuit on a civil rights complaint form with extensive attachment pages and exhibits organizing and stating his claims. Compl. 1-40, ECF No. 1. Kennemer acknowledges that he was arrested in February 2018 for "my 4th DWI and became a detainee at the Parker County Jail run by La Salle Southwest Corrections." *Id.* at 9. He complains of several different events that took place while he was housed in the Parker County Jail beginning on March 10, 2018, and later at the Jack County Jail, on numerous different dates

until he was transferred to the Texas Department of Criminal Justice on May 31, 2018. *Id*. at 9-10.

Kennemer's complaints begin on March 10, 2018, after he jumped off of his top bunk and broke the fibula (heel) bone in his right foot. *Id*. at 10.  His claims all arise from and involve the actions of county jail guards and other officials in their treatment of him while he was transported in vans on several different occasions for outside medical care or to court, as well as claims regarding the adequacy of the conditions in his cell for an inmate with a broken heel bone. Kennemer lists eighteen separate defendants. He first lists all eighteen defendants in a "Parties" section of his complaint at pages 4-8, and he then provides more detailed allegations in a "Statement of Claim" section at pages 9-26. Compl. 4-8, 9-26, ECF No. 1. The Court will highlight the substance of Kennemer's claims against each defendant as labeled (identified as "Defendant (starting with number 1 and continuing through number 18):

### Defendant 1- Parker County, Texas

Plaintiff writes that the floor of the Parker County Jail discriminates against his disability. He alleges his crutches slip on the floor, and that the showers in cell E-9 and G-15 discriminate against his disability. He claims he cannot stand on both feet and wash the lower part of his body without a seat in the shower. He also alleges Parker County Jail has no [shower] seats. Compl. 4, ECF No.1.

Plaintiff also claims the floors of the Parker County Jail are slick with water or a polished finish that "discriminates against someone with [his] disability to be able to walk on without crutches." Parker County is also alleged to be responsible for compliance with disability statutes, such as having showers with seats,  and rails beside the toilets. Compl. 13, ECF No. 1.

-2-

Plaintiff also recites a detailed factual narrative (apparently against Parker County, Texas) related to the conditions of his cell post-heel injury, to include allegations that he "is forced to drag myself to the toilet over a floor that has urine on it from a previous inmate," and he claims there was no way for him to avoid putting weight on his foot. Compl. 15, ECF No. 1

**Defendant 2 - LaSalle Southwest Corrections**

Plaintiff alleges LaSalle did not provide transportation equipped for his disability. The van used to transport him discriminated against [his] disability. He claims that he could not climb steps with crutches, and that LaSalle did not provide him, as a pre-trial detainee, with medical care.  Compl. 4, ECF No. 1.

La Salle is alleged to be responsible for providing medical staff that will follow doctor's orders, provide transportation that conforms to a detainee's disability, and provide jailers that understand the rights of detainees. Compl. 13, ECF No. 4.

**Defendant 3 - Larry Fowler, Sheriff, Parker County, Texas.**

Plaintiff contends Fowler acted in his own capacity by his failure to act in his official capacity. He also alleges Fowler is to oversee the operation of LaSalle and the Parker County Jail. Compl. 4, ECF No. 1.

Sheriff Fowler is alleged to be personally responsible for not walking through the Jail to see the conditions, and for not fulfilling his obligations to serve Parker County. Compl. 14, ECF No. 1.

Later in the complaint, Fowler is alleged to have disobeyed a court order, based upon Plaintiff's claims that after he was sentenced, the court ordered that he be "safely conveyed" to TDCJ. Plaintiff alleges Fowler failed by contracting with LaSalle Southwest to transport prisoners with disabilities. Compl. 22, ECF No. 1.

**Defendant 4 - Corrections Officer Jane Doe Garcia**

Plaintiff contends she acted in her own capacity by causing him pain when putting him into a transport van. He also alleges she refused to follow the prescription of the doctor by taking his  crutches and causing injury. Compl. 4, ECF No. 1

Plaintiff further claims that on March 11, 2018, Defendant 4 did not call for an ambulance to transport him to the hospital, and placed him in a van that was not equipped to carry a disabled person, and loaded him like a "sack of potatoes." Compl. 11, ECF No. 1. Once at the hospital, she caused him further pain when taking him out of the van. *Id.* at 12.  Defendant 4 was in the room when the examining doctor informed that he had broken his foot, needed to see a specialist, and was not to put weight on his foot for eight weeks. Compl. 12, ECF No. 1 Plaintiff also alleges Defendant 4 acted with reckless disregard for the orders of the doctors. *Id.* at 14.

Plaintiff also alleges that Defendant 4 was with a medical assistant when they failed to provide him pain medication as the doctor prescribed. Compl. 15, ECF No. 1.

**Defendant 5 - Officer Jane Doe 1 (assigned to E-9 Cell on March 10, 2018)**

Plaintiff alleges she acted in her own capacity by refusing to call an ambulance to provide him with medical care. Compl. 4, ECF No. 1.

Plaintiff also alleges that on March 10, 2018, at around 10:30 p.m., he fell off the top bunk and broke his right fibula (heel) bone.  He also alleges that within minutes, his foot swelled to the size of a "nerf football." He alleges  Defendant 5 was called and observed the injury, and she (with military training) could see that medical attention by a qualified doctor was needed, but she did not call for an ambulance and told him it would be Monday before he went to the hospital. Compl. 10, ECF No. 1.

**Defendant 6 - Officer John Doe 2 Officer (assigned to March 11, 2018 van transport)**

Plaintiff alleges he acted in his personal capacity causing pain while taking him out of the van. Compl. 5, ECF No. 1

On March 11, 2018, Defendant 6 transported him with Defendant 4, and once at the hospital, caused him pain taking him out of the van. *Id.* at 12.  Defendant 6 was in the room (with Defendant 4) when the examining doctor informed that he had broken his foot, needed to see a specialist, and was not to put weight on his foot for eight weeks. Compl. 12, ECF No. 1. Plaintiff also alleges Defendant 6 acted with reckless disregard for the orders of the doctors.

-4-

*Id*. at 14.

### Defendant 7 - Jay Eason, Director of Operations for LaSalle Southwest Corrections

Plaintiff contends that Jay Eason failed to act to provide trained guards and trained medical staff, that would properly follow the prescription of a doctor caring for an inmate patient. Compl. 5, ECF No. 1.

Plaintiff names Jay Eason in a personal capacity for "failing to act in his official capacity." Compl. 16, ECF No. 1. He also recites that he named Eason because he has "direct control over the staff employed at the Parker County jail." Compl. 16, ECF No. 1. Plaintiff also recites facts against Eason related to another inmate that have nothing to do with his claims in this case. Compl. 16, ECF No. 1.

### Defendant 8 - John Doe Warden (events of March 13, 2018)

Plaintiff alleges that an unnamed Warden, acting in his personal capacity, placed him in ER-9 cell with no way to wash his lower body. He also alleges the Warden failed in his official capacity by not training the jailers under him of how to provide for someone with the medical care as a detainee. Compl. 5, ECF No. 1.

Plaintiff also alleges that on March 13, 2018, the Warden forced him to sign off on a report that had been prepared on what had happened to him on March 10-11, and to agree to a narrative included in that report that he believed to be false statements from Defendant 5. Kennemer alleges he signed the papers in order to be moved out of segregation without a wheelchair or crutches. Compl. 17, ECF No. 1. Instead, Plaintiff alleges the Warden, after he signed the papers, returned him to the E-9 cell that had no seat in the shower or rails by the toilet, subjecting him to deliberate indifference to his medical needs and disability. Compl. 17, ECF No. 1.

### Defendant 9- Officer John Doe 4 (assigned as transport officer on March 27, 2018)

Plaintiff alleges this defendant hurt him in his own capacity by putting him physically in the transport van with a broken heel. Compl. 5, ECF No. 1.

On March 27, 2018, Plaintiff was again transported for medical care, and this time he alleges Defendants 9 and 10 "caused him pain and further injury by placing [him] in a LaSalle transport van." Compl.18, ECF No. 1. He also alleges these officers were present when his heel condition was discussed. *Id.* at 19.  He then alleges that these two officers showed reckless indifference by loading him in the van, and forcing him to put weight on his foot. *Id.* at 20.

**Defendant 10 - Officer Jane Doe 5 (assigned as transport officer on March 27, 2018)**

Plaintiff contends she acted in her own capacity by causing him harm after she heard the doctor's order for Plaintiff to keep weight off of his foot. He also alleges she physically put him in the transport van not equipped for my disability. Compl. 6, ECF No. 1.

[See same additional claims listed as to  Defendant 9]

**Defendant 11 - Officer Jane Doe 6 (assigned as transport officer on April 17, 2018)**

Plaintiff alleges she acted in her own capacity by forcing him to walk on ice and this resulted in his crutches slipping such that he "re-broke my fibula (heel on right foot)." Compl. 6, ECF No. 1

Once again, on April 17, 2018, Plaintiff was transported in a van, this time to the Parker County courthouse for an appearance in the 43rd District Court, where he acknowledges pleading guilty. Compl. 20-21, ECF No. 1. He contends that he entered a guilty plea to DWI 4th with a 10 year sentence, due to the conditions at Parker County. Compl. 21, ECF No. 1.

**Defendant 12 - Officer John Doe 7 (assigned as a transport officer on April 17, 2018)**

Plaintiff also alleges Defendant 12 acted in his own capacity and forced him to walk on ICE with his crutches resulting in a  re-fracture of his foot. Compl. 6, ECF No. 1.

As to both Defendants 11 and 12, Plaintiff has again listed them as transport officers, acknowledging that upon taking him to the courthouse, he was unloaded from the van under a cover, but complaining that upon completion

of court and to return to the van, he was forced to walk about 75 feet on 2 inches of ice on the sidewalk outside. Compl. 22, ECF No. 1. Plaintiff contends that he was forced to walk on the ice on his crutches, and put the full weight on his bandaged foot.  Compl. 22, ECF No. 1.

**Defendant 13 - Jack County, Texas**

Plaintiff recites that Jack County caused him injury by not providing him crutches or a wheelchair to get to the toilet and shower. He contends that Jack County discriminated against his disability by not allowing him to have rails at the toilet, or a seat in the shower. Compl. 6, ECF No. 1.

Plaintiff also informs that he was transported from the Parker County Jail to the Jack County Jail on May 23, 2018, and that the Jack County Sheriff's Department allowed his crutches to be taken away from him without seeing a doctor. Compl. 23, ECF No. 1.

**Defendant 14- Officer John Doe Robinson (assigned as a transport officer on May 23, 2018)**

Plaintiff alleges this defendant took the crutches prescribed to him by the doctor. Compl. 7, ECF No. 1.

Plaintiff once again complains of his transport, this time in a van to move him from Parker County to Jack County on May 25, 2018, and he alleges that both Defendants 14 and 15, acted in their own capacities, hurting [him] loading into the transportation van. Compl. 24, ECF No. 1

Upon intake at the Jack County Jail, Plaintiff alleges that Defendant 14 took his crutches away, but he acknowledges that Defendant 14 did so after he calling the medical department at Parker County Jail, and was allegedly told by the medical official that he did not need crutches anymore. Compl. 24, ECF No. 1.

Also, after being in the Jack County Jail for a few days, Plaintiff was then again transported on May 30, 2018 to Denton County Jail so that he could be picked up by a TDCJ transport vehicle. Compl. 25, ECF No. 1 The transport officers were once again Defendants 14 and 15, and Plaintiff complains they forced him to walk 100 feet without crutches, and caused him pain and injury in loading him into the van. Compl. 25, ECF No. 1.

**Defendant 15- John Doe 8 (Assigned as a transport officer for LaSalle on May 23, 2018)**

Plaintiff alleges Defendant 15 acted in his personal capacity in hurting him and causing injury by putting using his hands to place him into the transport van that was not equipped for his disability. Compl. 7, ECF No. 1.

[See additional claims above as to Defendants 14].

**Defendant 16- John Doe Corporal (only Corporal at the Jack County Jail on May 23, 2018)**

Plaintiff alleges the John doe Corporal acted in his own capacity by not having him taken to the hospital, and or scheduling him to have his foot x-rayed and a doctor consulted, regarding whether he still needed crutches. Plaintiff alleges this was a failure for him to act in his official capacity. Compl.7, ECF No. 1.

Plaintiff also alleges that upon his intake at Jack County Jail, the corporal identified as Defendant 16 saw his disability, as his foot was again the "size of a nerf football," but then failed to have him taken for emergency examination. Compl. 25, ECF No. 1. Plaintiff further alleges this defendant had authority to either call an ambulance or have him taken for emergency room care for his obvious need to address the size condition of his foot. *Id.* He also alleges the corporal assigned him to a cell with no seat in the shower, and no rails by the toilet. *Id.* He further contends he named the corporal as a defendant because of his "foot being fractured again in his jail." *Id.*

**Defendant 17 - Jane Doe Coffee (assigned as a medical assistant from March 10, 2018 to May 31, 2018)**

Plaintiff alleges she acted in her personal capacity by refusing to follow the recommendations of the doctor's medication orders. In this regard, Plaintiff alleges Defendant 17 denied him pain medication. Compl. 7, ECF No. 1.

Plaintiff contends that he showed Parker County medical assistant Jane Doe Coffee a copy of the prescription the specialist had given him, to include 500 mg of Tylenol three times a day. But her response was to ask where he obtained the prescription, and to inform him that "we only pass out medication twice a day." Compl. 23, ECF No. 1. Plaintiff alleges she refused to follow the pain medication prescribed for him by the doctor. *Id.*

-8-

**Defendant 18- Tom Spurlock, Sheriff, Jack County, Texas**

Plaintiff alleges Spulock acted in his personal capacity by failing to train the jailers at the Jack County Jail. More specifically, Plaintiff claims he failed to train that when a new inmate arrives at the jail with crutches, those crutches should not to be taken from that inmate them without a directed order from a doctor.  Compl. 8, ECF No. 1.

Later in the complaint, Plaintiff writes that Spurlock failed to train those under him, and failed to follow an order of the court (the same order Plaintiff complained of as to Sheriff Fowler) that in their role as Sheriffs, they were to "safely convey and deliver [him] to the Director, Institutional division, TDCJ." Compl. 34, ECF No. 1.

Compl. 4-26, ECF No. 1.

Plaintiff asserts claims for relief based upon constitutional violations as to all defendants, and he seeks relief under the Americans with Disabilities Act ("ADA") against Parker County, Texas and against Jack County, Texas. Compl. 9, ECF No. 1. Kennemer seeks declaratory relief as to the violation of his rights under the Fourteenth Amendment, extensive injunctive relief directing officials with Parker County, Jack County, and LaSalle Corrections to implement several changes in their practices and policies, and finally he seeks compensatory monetary damages against several defendants and punitive damages against Parker County, Texas. Compl. 27-28, ECF No. 1.

The Court notes that Plaintiff's *pro se* handwritten complaint as with attachment pages is very thorough and detailed. Also, the Court observes that in the twenty-nine page handwritten complaint plus exhibits, Kennemer has included 34 footnotes. Compl. 10-25, ECF No. 1. Generally, a *pro se* litigant, such as Kennemer, should be offered an opportunity

to amend his complaint before it is dismissed. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (reviewing the district court's dismissal under 42 U.S.C. § 1997(e)). Granting leave to amend is not required, however, if the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Scott*, 136 F.3d at 1054.) Upon this Court's review of Kennemer's complaint, the Court finds that he has already pleaded his "best case" as to the factual chronology, parties, and extensive detailed allegations. Thus, the Court has gone forward with the §§ 1915A and 1915(e) screening of the complaint as presented.[1]

### LEGAL STANDARD OF REVIEW UNDER §§ 1915A and 1915(e)(2)(B)

Plaintiff Kennemer is an inmate who has been permitted to proceed in forma pauperis. As a part of the Prison Litigation Reform Act ("PLRA"), Congress enacted 28 U.S.C. § 1915A, which requires a district court to review a complaint from a prisoner seeking relief from a governmental entity, officer, or employee as soon as possible after docketing. *See* 28 U.S.C.A. § 1915A(a). Because Kennemer is proceeding in-forma-pauperis, his complaint is also subject to screening under 28 U.S.C. § 1915(e)(2). Both § 1915(e)(2) and § 1915A provide for *sua sponte* dismissal of the complaint or any portion thereof, if it is frivolous, malicious, fails to state claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C.A. §§ 1915(e)(2)(B) and

---

[1]Kennemer recently filed a "Motion Urging Court to Complete Screening and Complete Service to Defendants." (ECF No. 11). As the Court has now completed screening, this motion must be **DENIED as moot.**

-10-

1915A(b).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lack an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id*. at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## ANALYSIS

### A. Claims Seeking Relief for Constitutional Violations under 42 U.S.C. § 1983

#### 1. No Personal Involvement - Sheriff Fowler, Sheriff Spurlock, and LaSalle Director Jay Eason

The Court first considers Kennemer's claims for violation of his federal constitutional rights through 42 U.S.C. § 1983.[2] A claim of liability for violation of rights under 42 U.S.C.

---

[2]"Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

§ 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Wanger v. Bonner*, 621 F.2d 675, 679 (5th Cir. 1980); *Baskin v.Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). The Court first considers Kennemer's individual liability § 1983 claims against Parker County Sheriff Larry Fowler, Jack County Sheriff Tom Spurlock, and LaSalle Director of Operations Jay Eason. Kennemer initially writes that Fowler was named in his personal capacity for failure to act in an official capacity to oversee the operations of La Salle and the Parker County Jail. Compl. 4, ECF No. 1. He further contends that Fowler failed to walk through the Jail, and failed to follow a court order that he "safely convey" Plaintiff to the custody of TDCJ. *Id.* at 14, 22. Kennemer similarly contends that LaSalle Operations Director Eason failed to act in an official capacity by failing to adequately train the guards and medical staff to follow the orders of medical providers. *Id.* at 5, 16. And, Kennemer writes that Jack County Sheriff Spurlock also failed to train, specifically claiming that Spurlock failed to train guards to not take away crutches without a doctor's orders. *Id.* at 8. Like the claims against Fowler, Kennemer alleges that Spurlock also failed to "safely convey and deliver" him to TDCJ. *Id*. at 24.

As to these allegations, Kennemer appears to have named Fowler, Eason, and Spurlock purely because of their supervisory capacity roles as the top administrators of the

---

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

jail facilities in Parker and Jack County, or Operations Director for LaSalle.  But, § 1983 does not authorize supervisory liability based only on *respondeat superior* or any theory of vicarious liability. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Only the direct acts of omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983"); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir.1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability") (citations omitted). Thus, to the extent Kennemer has named Fowler, Spurlock and Eason as responsible for the actions of subordinate officers under a theory of vicarious responsibility or *respondeat superior*, such a claim alone is insufficient to state a claim under § 1983. *See Ashcroft*, 556 U.S. at 676 (2009) (citing *Monell v. New York Dep. of Social Servs.*, 436 U.S. 658, 691 (1978)).

These officials are responsible under § 1983 only for their own actions and omissions. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Each may be personally liable if they "(1) failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Estate of Henson v. Callahan*, 440 F. App'x 352, 356 (5th Cir. 2011) (citing *Thompson v. Upshur Cnty., TX.*, 245 F.3d 447, 459 (5th Cir. 2001) (citations omitted)). To state a claim of deliberate indifference in this context, generally requires "a showing 'of more than a single instance of the lack of training or supervision causing a

violation of constitutional rights.'" *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) ("[A] plaintiff [must] demonstrate 'at least a pattern of similar violations" arising from training or supervision "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation'") (quoting *Thompson*, 245 F.3d at 459)).

As noted, Kennemer recites conclusory claims against Fowler, Spurlock, and Eason of a failure to have sufficient training policies, but he has not cited actual facts to show a pattern of similar violations that arise from the alleged failures. Rather he essentially alleges a failure to sufficiently train, based only upon the actions taken against him. As Kennemer either alleges insufficient personal involvement by these defendants, or asserts conclusory claims of inadequate training, his claims under § 1983 against Fowler, Spurlock, and Eason in their individual capacities must be dismissed for failure to state a claim upon which relief may be granted.

## 2.   Dismissal of Official Capacity Claims and Municipal Liability Claims

As noted above, Kennemer alleged that Fowler, Spurlock, and Eason acted in a "personal capacity" by failing to act in an official capacity. The Court will consider these claims as if Kennemer also asserted claims under § 1983 against these defendants in an official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Similarly, an official-capacity suit against employees of an agency

-14-

or company is in essence a suit against the company of which they are agents. *Fields v. Trinity Food Service*, No. 17-1190-JDT-cgc, 2019 WL 5268565, at *4 (E.D. Tenn. Oct. 17, 2019 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Thus, Kennemer's official capacity claims against Sheriffs' Fowler and Spurlock must be treated as brought against Parker County and Jack County. His claims against Eason in an official capacity will be treated as brought against LaSalle Southwest Corrections. Kennemer, however, has also separately named Parker County, Jack County, and La Salle Southwest Corrections. Compl. 4, 6, ECF No. 1. Thus, the Court will consider whether Kennemer has sufficiently stated municipal liability claims against any of these three defendants.[3]

It is well established that a municipality or local government entity cannot be held vicariously liable under a theory of respondeat superior for the wrongdoing of municipal employees. *See Monell*, 436 U.S. at 691. Liability against a government entity is available under § 1983 only for acts that are "directly attributable to it 'through some official action

---

[3] Kennemer has named LaSalle Southwest Corrections on the basis that it operates the Parker County Jail. Although LaSalle is a private corporation, it may be sued under 42 U.S.C. § 1983 for alleged constitutional injury, because the operation of a prison is a fundamental government function. *See generally Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2013) ("We agree with the Sixth Circuit and with those district courts that have found that private prison-management corporations and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury.") The standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function. *See Monell*, 436 U.S. at 691. Thus, the Court will apply the same standards applicable to review of the § 1983 claims against the municipal defendants to review of the § 1983 claims against LaSalle Southwest Corrections.

or imprimatur.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). To state a claim a civil rights plaintiff must allege, at a minimum, facts identifying the following essential elements: (1) an official policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy at issue. *See Piotrowski*, 237 F.3d at 578.

Although Kennemer writes of the alleged failure of both Parker and Jack Counties, and of La Salle Southwest Corrections, to provide facilities and services that are equipped for his disability (with extensive detailed allegations about the conditions of the floors, showers, and toilet facilities), he never recites a particular policy, practice, or custom of any of these entities implemented by a policy maker that caused him to sustain injury. Compl. 4, 6, 13, 15, 23, ECF No. 1. Thus, Kennemer's allegations do not implicate any official policy and he does not articulate facts that would support inadequate policy based claims against Parker County, Jack County, or LaSalle Southwest Corrections. Thus, all of Kennemer's claims for relief under § 1983 against defendants Fowler, Spurlock, and Eason in an official capacity, and all claims for relief under § 1983 against Parker County, Jack County, and LaSalle Southwest Corrections, must be dismissed for failure to state a claim upon which relief may be granted.[4]

---

[4]As noted above, Kennemer has also asserted claims under the ADA against both Parker County and Jack County. Compl. 9, ECF No. 1. The Court will allow Kennemer to obtain service of process of his claims under the ADA against Parker County and Jack County. Although the ADA authorizes claims against a "public entity," it does not authorize individual liability. *See Nottingham v. Richardson*, 499 F. App'x 368, 376  n.6 (5th Cir.

3.    No Allegations of Deliberate Indifference - Multiple Defendants

In order to support a claim for relief under § 1983, a plaintiff must also set forth facts in support of both of its elements: (1) the deprivation of a right secured by the Constitution or laws of the United States; and (2) the deprivation of such right by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 48 (1988) (citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development*, 980 F.2d 1043, 1050 (5th Cir.1993). Screening review reveals that in many instances, Kennemer has failed to state a plausible claim of a violation of a constitutional right.

As noted in detail above, Kennemer has named and recited claims against several corrections officers associated with different dates when he was transported by van either to medical appointments or to court.  In this regard, he alleges that on March 11, 2018, Defendant 4 (Officer Jane Doe Garcia) and Defendant 6 (Officer John Doe 2) caused him pain by putting him in a van that was not equipped to carry someone who was in need of a wheelchair, and loaded him like a "sack of potatos." Compl. 11, ECF No. 1. He further alleges these two officers caused him pain while unloading him from the van. *Id.* at 12.

The next complained of van transport was on March 27, 2018, and this time Kennemer identifies, Defendant 9 (John Doe Officer 4) and Defendant 10 (John Doe Officer 5) on complaints that they hurt him as they placed him in the van, and though they were

---

2012) (citing Lollar v. Baker, 196 F.3d 603, 609 (5th Cir. 1999)). It does not appear to the Court's that Kennemer has recited any claim under the ADA against an individual defendant, however, in an abundance of caution, the Court will expressly dismiss any such claims.

-17-

present when his heel condition was discussed with the medical personnel, they showed "reckless indifference" when re-loading him into the van and forced him to put weight on his foot. Compl. 18, ECF No. 1.

Then on April 17, 2018, Kennemer was transported to the Parker County courthouse for criminal proceedings in icy conditions. Compl. 21-22,ECF No. 1. This time he alleges that Defendant 11 (Jane Doe Officer 6) and Defendant 12 (John Doe Officer 7) forced him to walk on the ice with his crutches, and he slipped and re-injured his heel bone. Compl. 21-22, ECF No. 1. Plaintiff acknowledges, however, that he was able to walk on the ice across 75 feet upon his return to the van after the court proceedings. *Id*. at 22.

Plaintiff once agin complains of the actions of transport officers related to a May 25, 2018 transfer from Parker County Jail to the Jack County Jail. Compl. 24-25, ECF No.1. In this instance, Kennemer names Defendant 14 (John Doe Robinson) and Defendant 15 (John Doe 8) as the transport officers. He alleges that on May 25, 2018 both of these defendants hurt him when they loaded him into the transport van. *Id.* at 24. He also contends that Defendant 14 took his crutches away, but acknowledges Defendant 14 did so only after checking by phone with the medical department at Parker County. *Id.*

After only a few days in the Jack County Jail, Kennemer explains that on May 30, 2018, he was again transported to the Denton County Jail in order for him to be picked up by TDCJ. *Id.* at 25. Once again, Defendants 14 and 15 were the transport officers assigned to move him, and on this occasion, Kennemer contends the officers forced him to walk 100

feet without crutches, thus causing him pain and injury when loading him into the van. *Id.*

Kennemer informed the Court that he was a pretrial detainee subject to the Fourteenth Amendment for the bulk of the time of the allegations in his complaint, but he also claims that as a result of his April 17, 2018 guilty plea in the 43rd District Court, Parker County, Texas, he became a convicted prisoner subject to the Eighth Amendment. Compl. 21, ECF No. 1. The Fifth Circuit has held that the deliberate-indifference standard normally associated with Eighth Amendment claims also applies with respect to episodic-act-or-omission claims by pretrial detainees. *Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir. 1996). Under that standard, an inmate is required to allege facts that indicate officials were deliberately indifferent to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A detainee is required to establish that the defendant official has actual subjective knowledge of a substantial risk of serious harm but responds with deliberate indifference to that risk. *Hare*, 74 F.3d at 643 and 650. Such a finding of deliberate indifference, though, "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991). This subjective deliberate-indifference standard is equated with the standard for criminal recklessness:

> [A] prison official cannot be found liable defining the Eighth Amendment for denying an inmate humane conditions of confinement unless "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

-19-

*Farmer*, 511 U.S. at 837; *see also Hare*, 74 F.3d at 648 ("[W]e conclude that a deliberate indifference standard is compelled by our cases and consistent with the relevant teachings of the Supreme Court. We hold that the episodic act or omission of a state jail official does not violate a pretrial detainees's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs").

A review of Kennemer's factual allegations against all of the different transport officer defendants shows that he has not stated any claims that would constitute deliberate harm or wanton disregard of his rights. Rather, Kennemer's factual allegations in each instance support, at best, claims that each of these officers failed to act reasonably in loading, transporting, and unloading him at the many different instances transport was required. Although Kennemer at times alleges that these officers were "deliberately indifference," or showed "recless indifference to harm," his factual allegations do not show that any of these officers said anything to him, or took any actions, that shows they both "knew of and disregarded an excessive risk in inmate health of safety." *Farmer*, 511 U.S. at 837. At most, Kennemer's allegations against these transport officers might support a claim that they were negligent. Allegations of negligence are not sufficient to maintain an action under 42 U.S.C. § 1983. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (concluding that the Constitution "is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property"); *Davidson v. Cannon*, 474 U.S. 344, 347-48

-20-

(1986) (stating that "lack of due care . . . simply does not approach the sort of abusive government conduct" which rises to the level of a constitutional violation); *see Oliva v. Rupert*, 555 F. App'x 287, 288 (5th Cir. 2012) (affirming the district court's dismissal under 28 U.S.C. § 1915A(b)(1) of Eighth Amendment claims that transporting officers were responsible for inmate's fall while exiting van, and stating "Oliva's allegations against the two transporting officers state, at most, claims for negligence and [are] therefore not valid § 1983 claims") (citing *Daniels*, 474 U.S. at 332-36)).

Therefore, the Court finds and concludes that Kennemer's allegations against the different defendant officers involved in loading and transporting him in vans, fail to state claims of the violation of a constitutional right. As such, Kennemer's claims against all of the transport officers—Defendant 4 (Officer Jane Doe Garcia), Defendant 6 (Officer Jon Doe 2), Defendant 9 (Officer John Doe 4), Defendant 10 (Officer Jane Doe 5), Defendant 11, (Officer Jane Doe 6), Defendant 12 (Officer John Doe 7), Defendant 14 (Officer John doe Robinson), and Defendant 15 (Officer John Doe 8), will be dismissed for failure to state a claim upon which relief may be granted. .

### B.  Claims for  Injunctive Relief Moot after Transfer to TDCJ

Kennemer seeks injunctive relief against defendants Parker County, Jack County, and La Salle Southwest Corrections related to provision of medical care to him, and particular changes to the bathrooms, showers, and other physical facilities at both jails. Compl. 9, 27, ECF No. 1. As Kennemer is no longer housed in either of these county jails, however, his

claims for injunctive or declaratory relief are moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison); *Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive relief becomes moot when inmate leaves the complained-of-facility) (citations omitted); *Pitre v. David Wade Correctional Ctr.*, Civ. A. No. 06-1802, 2008 WL 466160 at *3 (W.D. La. Feb. 14, 2008) (dismissing as moot plaintiff's claims for injunctive relief because he transferred to another prison after filing the complaint). Accordingly, all  Kennemer's claims for injunctive relief must be dismissed.

## ISSUANCE OF SUMMONS AS TO REMAINING CLAIMS

The Court finds that as to Kennemer's claims for relief under § 1983 against the remaining individual defendants (that is Defendant 5-Officer Jane Doe 1, Defendant 8-Warden John Doe, Defendant 16-Corporal John Doe, and Defendant 17-Jane Doe Coffee), and as to Kennemer's claims under the ADA against Parker County, Texas, and Jack County, Texas, the Court will issue a separate order to allow Kennemer to obtain the issuance of summons.

## CONCLUSION and ORDER

It is therefore **ORDERED** that the motion to complete screening (ECF No. 11) is **DENIED** as moot.

It is further **ORDERED** that the following claims  are **DISMISSED with prejudice** under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B): (1) all of Kennemer's claims for

violation of constitutional rights under 42 U.S.C. § 1983 against Larry Fowler, Tom Spurlock, and Jay Eason in both their individual and official capacities; (2) all of Kennemer's claims for violation of constitutional rights under 42 U.S.C. § 1983 against Parker County,Texas, LaSalle Southwest Corrections, and Jack County, Texas;   (3) all of Kennemer's claims for violation of constitutional rights under 42 U.S.C. § 1983 against Defendant 4 (Officer Jane Doe Garcia), Defendant 6 (Officer John Doe 2), Defendant 9 (Officer John Doe 4), Defendant 10 (Officer Jane Doe 5), Defendant 11, (Officer Jane Doe 6), Defendant 12 (Officer John Doe 7), Defendant 14 (Officer John Doe Robinson), and Defendant 15 (Officer John Doe 8); (4) all claims for injunctive relief; and (5) any claims under the Americans with Disabilities Act asserted against any defendant in an individual capacity.

   **SO ORDERED** this **30th day** of **March, 2021.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE